UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RYAN T. BLUMLING, | CASE NO. 4:19CV02587 |
| Petitioner, | JUDGE PAMELA BARKER |
| v. | Magistrate Judge George J. Limbert |
| UNITED STATES OF AMERICA, | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Respondent. | |

On March 1, 2018, Petitioner Ryan Blumling ("Petitioner"), through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Western District of Pennsylvania. ECF Dkt. #1. Petitioner has since amended his petition twice and his case was ultimately transferred to the Northern District of Ohio. ECF Dkt. #s 9, 20, 30, 32. In his habeas corpus petition, Petitioner requested the Court to recognize the state's concurrent sentence and order the Federal Bureau of Prisons ("BOP") to afford him credit on his federal sentence for time served for his state sentence. ECF Dkt. #1, 9, 32.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's amended § 2241 federal habeas corpus petition WITH PREJUDICE. ECF Dkt. #32. However, the undersigned recommends that the Court order the DSCC of the BOP to reconsider Petitioner's request for credit, or alternatively, consider Petitioner as a candidate for home detention in line with the Attorney General's memorandum concerning COVID-19. As such, the undersigned also RECOMMENDS that the Court DENY Petitioner's motion for expedited proceedings (ECF Dkt. #31) as MOOT; DENY Respondent United States of America's ("Respondent") motion to dismiss (ECF Dkt. #37); and DENY Petitioner's motion for a status report (ECF Dkt. #40) as MOOT.

1

**I.     BACKGROUND**

Respondent has not filed a transcript of the state court proceedings in this case, but both parties have described the procedural history and have filed several relevant exhibits.

Between April 22, 2013 and February 22, 2016, Petitioner was involved in four separate criminal cases in the Court of Common Pleas of the Commonwealth of Pennsylvania, Allegheny County. Petitioner was indicted for various offenses and was granted bond in each of the four state court cases in a continuous manner from 2013 until February 22, 2016. ECF Dkt. #32 at 2-3; *see* ECF Dkt. #s 1-1, 1-2, 1-3, 1-4.

Meanwhile, on February 10 or 11 of 2015, Petitioner was indicted on two counts of wire fraud and two counts of mail fraud in the Western District of Pennsylvania in Case No. 2:15-CR-00028. His federal indictment was issued while Petitioner was in the Allegheny County Jail awaiting his R.O.R. bond release. Petitioner was taken into federal custody and was transferred to a federal detention center, the Northeast Ohio Correctional Center - Correctional Corporation of America (NEOCC-CCA), in Youngstown, Ohio. ECF Dkt. #1 at 1; #9 at 1; #32 at 3.

On April 24, 2015, Petitioner pled guilty to all four counts in his federal indictment. Petitioner remained in custody at NEOCC-CCA until his final sentencing and disposition of his federal matter. On December 3, 2015, Petitioner was sentenced in his federal case for 63 months imprisonment and a three-year term of supervised release. On December 14, 2015, Petitioner was transferred back to the Allegheny County Jail. ECF Dkt. #1 at 1; #9 at 1; #15 at 2; #32 at 3.

On February 22, 2016, Petitioner pled guilty to all charges in each of his 4 pending state court matters. ECF Dkt. #s 1-1, 1-2, 1-3, 1-4. Subsequently, Petitioner was sentenced in the Court of Common Pleas of Allegheny County to a term of incarceration of 3 to 10 years in Case Nos. CC201303261, CC201304326, and CC201412443 and a concurrent period of incarceration of 2 to 4 years in Case No. CC201503500. *See id.*; ECF Dkt. #1 at 1; #9 at 2; #32-1 (Order of Sentence). The state court included the following in its sentencing order:

> Confinement is concurrent to Federal sentence that Defendant is currently serving. Defendant may serve this sentence at Federal facility. This Sentence shall commence on 02/22/2016.

ECF Dkt. #32-1.

However, the Allegheny County Jail transferred Petitioner to the Pennsylvania Department of Corrections ("POC") in March 2016. ECF Dkt. #32 at 4. Petitioner notified the state trial court of the error. On June 9, 2016, the state court issued an order to the POC to immediately relinquish jurisdiction with respect to the 4 state criminal cases and to transfer Petitioner to the custody of the BOP to serve his remaining sentence for the 4 state criminal cases in a federal correctional facility. *Id.*; ECF Dkt. #32-2.

Petitioner served his state sentence and was paroled on May 11, 2017. ECF Dkt. #1; #9 at 2. Petitioner is currently incarcerated at FCI Elkton in Lisbon, Ohio and his current release date is on or about January 15, 2022. ECF Dkt. #1 at 2; #9 at 2; *see also* ECF Dkt. #37-2 at 2.

## II. FEDERAL HABEAS CORPUS PETITION UNDER 28 U.S.C. § 2241

On March 1, 2018, Petitioner, through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Western District of Pennsylvania. ECF Dkt. #1. Petitioner has since amended his petition twice and his case was ultimately transferred to the Northern District of Ohio. ECF Dkt. #s 9, 20, 30, 32.

Petitioner submits that he is entitled to credit on his federal sentence for the time he spent in Pennsylvania State custody due to his federal sentence being inadvertently interrupted by the actions of the Allegheny County Jail. ECF Dkt. #32 at 4. He maintains that his federal sentence should have commenced upon the state court's February 22, 2016 sentencing order[1], which stated that his sentence was to be served concurrent to his federal sentence. *Id.* at 5. Petitioner avers that Respondent and the BOP are only crediting Petitioner from June 21, 2017, depriving him of a liberty interest of approximately sixteen (16) months towards his release he spent in official confinement. *Id.*

While the instant case was pending in the Western District of Pennsylvania, Respondent filed a "Response to Petition for Writ of Habeas Corpus," arguing jurisdictional issues and that

---

[1]In his original and first amended habeas corpus petitions, Petitioner maintained that his federal sentence should have been credited from his federal sentence and date of commitment, December 3, 2015. ECF Dkt. #s 1, 9. However, in his most recent amended petition, Petitioner changed positions and now contends that his federal sentence should have commenced upon the state court's February 22, 2016 sentencing order. ECF Dkt. #32 at 5.

3

Petitioner failed to exhaust his administrative remedies. ECF Dkt. #15. On November 4, 2019, a Magistrate Judge in the Western District of Pennsylvania transferred the instant petition to this District, thus resolving the jurisdictional issues. ECF Dkt. #29.

On March 13, 2020, Respondent filed a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction for failure to exhaust his administrative remedies, but Respondent did not address the merits of the petition. ECF Dkt. #37. As support for its motion, Respondent included a declaration of Robin Summers, a paralegal specialist employed by the BOP. ECF Dkt. #37-2.

On April 10, 2020, Petitioner executed a traverse/response to the motion to dismiss, which was filed on April 15, 2020. ECF Dkt. #39. Petitioner contends that he fully exhausted his administrative remedies and included documentation to support his argument, thus contradicting Robin Summers' declaration. ECF Dkt. #39 (and exhibits).

### III.     STANDARDS OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action for lack of subject-matter jurisdiction. In a Rule 12(b)(1) motion, the plaintiff has the burden of proving that the Court has subject-matter jurisdiction. *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003); *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996). Challenges to subject-matter jurisdiction under Rule 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prod., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir.2007). Under a facial attack, all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion. *Id.* Under a factual attack, however, the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction and there is no presumption of truthfulness. *Gentek*, 491 F.3d at 330; *RMI Titanium*, 78 F.3d at 1134. When resolving a factual attack, the district court "has wide discretion" to rely on affidavits or documents and can even conduct "a limited evidentiary hearing to resolve disputed jurisdictional facts." 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)). Respondent brings a factual attack. ECF Dkt. #37-1 at 2.

28 U.S.C. § 2241, entitled "Power to grant writ," covers federal courts' general authority over habeas corpus petitions. *See, e.g.*, *Rittenberry v. Morgan*, 468 F.3d 331, 333 (6th Cir. 2006);

*Phillips v. Court of Common Pleas, Hamilton County, Ohio*, 668 F.3d 804, 809 (6th Cir. 2012). Section 2241 permits a federal court to grant a writ of habeas corpus to a prisoner who is "in custody" in several circumstances, including, in relevant part, (1) "under or by color of the authority of the United States or is committed for trial before some court thereof," (2) "for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States," or (3) "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1)-(3).

In short, a section 2241 petition is appropriate for claims challenging the execution or manner in which the sentence is served. *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001). Section 2241 "is a vehicle not for challenging prison conditions, but for challenging matters concerning the execution of a sentence such as the computation of good-time credits." *Sullivan v. United States*, 90 Fed. Appx. 862, 863 (6th Cir. 2004). Thus, section 2241 petitions must be brought in the district of confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443, 124 S. Ct. 2711, 2722, 159 L. Ed. 2d 513 (2004). Since Petitioner is confined within this District, this Court has jurisdiction to hear Petitioner's claim pursuant to 28 U.S.C. § 2241.

**IV.** **ANALYSIS**

The Prison Litigation Reform Act (PLRA) requires inmates to fully exhaust their available administrative remedies before filing a petition for a writ of habeas corpus. 42 U.S.C. § 1997e(a), *held unconst'l on other grounds by*, *Siggers-El v. Barlow*, 433 F. Supp. 2d 811 (E.D. Mich. 2006); *e.g.*, *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S. Ct. 2378, 2382-83, 165 L. Ed. 2d 368 (2006); *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 233 (6th Cir. 2006); *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002); *Booth v. Churner*, 532 U.S. 731, 734, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001). The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a).

The BOP administrative remedy procedure is set out at 28 C.F.R. §§ 542.10–542.19 and provides formal review of any complaint which relates to any aspect of the inmate's confinement.

5

28 C.F.R. §542.10(a). As stated by Respondent and in the attached Declaration of Robin Summers, the BOP administrative review process is as follows:

> Under [BOP] regulations, in order to exhaust all processes under the Administrative Remedy Procedure for Inmates, an inmate must first attempt to informally resolve the dispute with institution staff. 28 C.F.R. §542.13. If informal resolution efforts fail, the inmate may raise his or her complaint to the Warden of the institution in which he or she is confined, within 20 calendar days of the date that the basis of the complaint occurred. 28 C.F.R. §§ 542.13, 542.14. If the Warden denies the administrative remedy request, the inmate may file an appeal with the Regional Director within 20 calendar days of the date of the Warden's response. 28 C.F.R. §§ 542.14, 542.15. If the Regional Director denies the appeal, the inmate may appeal that decision to the General Counsel of the [BOP] within 30 calendar days from the date of the Regional Director's response. 28 C.F.R. §§ 542.14, 542.15. The administrative remedy process is not considered to be "exhausted" until an inmate's final appeal is denied by the [BOP] General Counsel.

ECF Dkt. #37-2 at 2; *see also* ECF Dkt. #37-1 at 3.

Respondent contends that Petitioner failed to exhaust his administrative remedies. ECF Dkt. #37-1 at 4. For support, Respondent attached the declaration of Robin Summers, who conducted a search of the administrative remedy index. ECF Dkt. #37-2. This search reveals a single claim by Petitioner on August 23, 2018 while at FCI Elkton that was apparently withdrawn on September 22, 2018. *Id.*; *see also* ECF Dkt. #15 at 7-8; #15-3. However, Respondent failed to conduct its due diligence in this matter, as Petitioner provided a detailed account of further administrative review procedures that he underwent, with supporting documentation. *See* ECF Dkt. #39 (and exhibits).

First, Petitioner attempted to informally resolve the matter. He first became aware that the BOP was not crediting his state time served after he began serving his federal sentence at the federal institution. ECF Dkt. #39 at 3. After Petitioner was received at FCI Elkton on September 6, 2017, Petitioner immediately began discussions with prison staff about the matter, in particular Officer Shawn Williams, who, at the time, headed the prison's records department. *Id.* at 4. Petitioner was instructed and became aware that he needed to exhaust his administrative remedies by a specific protocol regarding *nunc pro tunc* jail time credit, known as the "*Barden* Review Process." *Id.*; *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990).

As directed by Officer Williams, Petitioner submitted a written request on December 1, 2017 to receive credit for time served to the prison's records department, which then forwarded the request to the BOP's Designation and Sentence Computation Center ("DSCC"). ECF Dkt. #39 at

6

4; #39-1. On January 30, 2018, the DSCC responded that it was considering Petitioner's request in accordance with *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990), and would make a determination in due course. ECF Dkt. #39 at 5; #39-2 at 2. On June 19, 2018, the DSCC sent Petitioner a letter with an update that it was still in the process of seeking out the position of the federal sentencing court, in accordance with *Barden*. ECF Dkt. #39-2 at 3.

Subsequently, on June 25, 2018, Petitioner submitted a "BP-8 ½" informal resolution form to begin the administrative remedy process. ECF Dkt. #39 at 5; #39-3. On the same day, Petitioner received a response by FCI Elkton's Case Management Coordinator, Ms. K. Cole. ECF Dkt. #39 at 6. In her response, Ms. Cole stated: "Please refer to your response from DSCC. They are seeking the position of the federal sentencing court." ECF Dkt. #39-3.

Petitioner discussed continuing administrative remedies with Officer Williams, which would have been to file a "BP-9" request to the Warden. ECF Dkt. #39 at 6. Officer Williams informed Petitioner that the *Barden* Review Process at DSCC was the ultimate administrative remedy and that the prison and its records department did not have the ability at the institutional level to address nor remedy the issue involving sentence computations or time credits. *Id.* at 6-7. This conclusion was reinforced by Ms. Cole's response, deferring to the DSCC, which would have the ultimate authority.

On July 13, 2018, Petitioner was served a denial from DSCC for the *nunc pro tunc* designation request. ECF Dkt. #39 at 7. Petitioner did not attach the denial nor state the reasons provided for the denial. Neither does Petitioner allege that the BOP unlawfully denied him credit for the time he had served in state prison. From that point, Officer Williams advised Petitioner to seek relief from the courts because the DSCC issued the decision, which is a central office and ultimate time credit decision-making entity of the BOP, because a court would be the only authority that could intervene, supercede, or render a decision that would override the DSCC's decision. *Id.* Subsequently, Petitioner filed the instant habeas corpus petition.

The undersigned recommends that the Court find that Petitioner fully exhausted his administrative remedies. He first attempted to informally resolve the dispute with institution staff. While Petitioner did not proceed through the intermediate steps, he complied with what the prison staff recommended in order to exhaust his administrative remedies. Petitioner essentially skipped

7

the intermediate steps and requested relief directly from the ultimate authority on the matter, the DSCC, which carries out sentence computation functions for the BOP. *See* FEDERAL BUREAU OF PRISONS, *Custody & Care: Sentence Computations*, available at https://www.bop.gov/inmates/custody_and_care/sentence_computations.jsp; *Barden v. Keohane*, 921 F.2d 476, 482 (3d Cir. 1990) (discussing legislative history); *see also* ECF Dkt. #39-2. The DSCC fully considered Petitioner's claim and made its own determination, thus making any subsequent action at a lower level unnecessary and futile.

While Petitioner has fully exhausted his claim, the undersigned recommends that the Court deny Petitioner's section 2241 petition on the merits. Petitioner requests the Court to order the BOP to credit Petitioner with time served in state custody to his federal sentence. ECF Dkt. #32. However, as designated in Petitioner's primary support, *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990), and other case law, the BOP, not the federal court, has the exclusive power to order sentence concurrency under these particular facts.

The facts of *Barden* are substantially similar to the instant case. While awaiting trial on state charges, Barden was sentenced in his federal case. After his federal sentencing, he returned to state custody and was sentenced by the state trial court, which ordered that the state sentence run concurrently with his federal sentence. Barden served his state sentence in a state institution. After he was paroled from state custody, he was turned over to the federal authorities and began his federal sentence. Barden attempted to gain credit for the time he served in state prison, first through the BOP, and then through the District Court. The Third Circuit found that the BOP mistakenly failed to recognize its power to designate a state facility *nunc pro tunc* as a place of federal confinement wherein Barden could gain credit against his federal sentence for time served. The Circuit expressly limited its holding, which was that only the BOP has the power to grant relief in the form of a *nunc pro tunc* designation of the state prison as a place of federal confinement; that Barden was entitled to have the BOP examine his case; and that his section 2241 habeas petition was an appropriate judicial means of compelling that examination. *See Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990). The Court itself, however, did not order concurrency, and in fact, found that it "was actually powerless to do so." *Id.* at 484; *see also United States v. Wilson*, 503 U.S. 329,

8

335, 112 S. Ct. 1351, 1355, 117 L. Ed. 2d 593 (1992) ("After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence.") (citing 18 U.S.C. § 3621(a)); 18 U.S.C. § 3585(b). Courts in this District have recognized the holding in *Barden* and have also held the same. *E.g.*, *Ruff v. Butler*, No. 16-5565, 2017 WL 5135545, at *2 (6th Cir. June 16, 2017); *Miller v. Fed. Bureau of Prisons*, No. 1:13-CV-2633, 2014 WL 2722343, at *3 (N.D. Ohio June 16, 2014); *see United States v. Crozier*, 259 F.3d 503, 520 (6th Cir. 2001) ("[T]he power to grant credit for time served lies solely with the Attorney General and the Bureau of Prisons."). *But see United States v. Lemons*, No. 1:02 CR 349, 2012 WL 774994, at *1 (N.D. Ohio Mar. 7, 2012) ("Although entirely within the discretion of the [BOP], this Court believes this to be appropriate and just" that petitioner's "state institution [sentence] be retroactively designated for service of his federal sentence").

> As the Sixth Circuit noted:
>
> Under § 3621(b), the BOP considers five factors when reviewing a request for retroactive designation: (1) the resources of the state facility; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the sentencing court concerning the purposes warranting a sentence of imprisonment or recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement of the Sentencing Commission. The relevant BOP program statement provides that "[a] designation for concurrent service of sentence will be made only when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system." BOP Program Statement 5160.05(8). It further states that in making a retroactive designation determination, the Regional Director will review the inmate's disciplinary history and institutional adjustment, recommendations of the wardens at both the federal and state institutions, the recommendation of the federal prosecutor, and the intent of the sentencing court, if available. *Id.*
>
> The BOP "must consider a [retroactive] designation request but has no obligation to grant it." *Jones v. Winn*, 13 Fed.Appx. 419, 421 (7th Cir. 2001) (citing 18 U.S.C. § 3621(b); *Barden*, 921 F.2d at 478). "The test is not whether a reviewing court would weigh the factors differently. The writ may issue only where an error is fundamental and carries a serious potential for a miscarriage of justice." *Eccleston v. United States*, 390 Fed.Appx. 62, 65 (3d Cir. 2010) (citing *Barden*, 921 F.2d at 479).

*Ruff v. Butler*, No. 16-5565, 2017 WL 5135545, at *2 (6th Cir. June 16, 2017).

Petitioner has not alleged any fault with the DSCC's decision to deny his request to grant credit towards his federal sentence. ECF Dkt. #s 32, 39. Petitioner did, however, request the Court to consider a separate issue in his traverse: the circumstances in the prison due to the COVID-19

9

pandemic. ECF Dkt. #39 at 10-13. While the Court generally need not address new issues raised in a traverse, the undersigned will consider it due to the rapid change in circumstances during the course of this matter.

Petitioner avers that there have been several infections and at least three deaths from FCI-Elkton and that Attorney General William Barr released an April 3, 2020 memorandum addressing the worst and hardest hit facilities in the BOP, including FCI-Elkton. *Id.* at 11; Memorandum from Att'y Gen. William Barr to Director of Bureau of Prisons (Apr. 3, 2020), available at https://www.justice.gov/file/1266661/download [hereinafter "Att'y Gen. Memorandum"]. In his memorandum, the Attorney General indicated that, under the CARES Act, he is now authorized and makes the finding "to expand the cohort of inmates who can be considered for home release..." Att'y Gen. Memorandum at 1. The Attorney General is also "directing [the BOP] to immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at ... FCI Elkton," to determine if they are suitable candidates for home confinement. *Id.* at 2. Petitioner alleges that he has "well-documented health conditions, including an auto-immune disease." ECF Dkt. #39 at 13. Given that Petitioner's federal convictions are for non-violent offenses, consisting of two counts of wire fraud and two counts of mail fraud, and his underlying medical condition, the undersigned agrees that Petitioner may be a good candidate for home confinement. However, the Court cannot grant a section 2241 petition on this ground alone. *See Sullivan v. United States*, 90 Fed. Appx. 862, 863 (6th Cir. 2004) (noting that section 2241 "is a vehicle *not for challenging prison conditions*, but for challenging matters concerning the execution of a sentence such as the computation of good-time credits.").

While the undersigned does not recommend that the Court grant Petitioner's section 2241 petition outright, we recommend that the Court order the DSCC of the BOP to reconsider Petitioner's request for credit, or alternatively, consider Petitioner as a candidate for home detention, in line with the Attorney General's memorandum concerning COVID-19.

## V.     CONCLUSION AND RECOMMENDATION

For the above reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's amended §2241 federal habeas corpus petition (ECF Dkt. #32) in its entirety WITH

PREJUDICE. The undersigned also RECOMMENDS that the Court DENY Petitioner's motion for expedited proceedings (ECF Dkt. #31) as MOOT; DENY Respondent's motion to dismiss (ECF Dkt. #37); and DENY Petitioner's motion for a status report (ECF Dkt. #40) as MOOT. Finally, the undersigned recommends that the Court order the DSCC of the BOP to reconsider Petitioner's request for credit , or alternatively, consider Petitioner as a candidate for home detention, in line with the Attorney General's memorandum concerning COVID-19.

DATE: June 18, 2020  */s/ George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).