# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Ryan Blumling, | | Case No.  4:19cv2587 |
| | Petitioner, | |
| -vs- | | JUDGE PAMELA A. BARKER |
| United States of America, | | MEMORANDUM OPINION AND |
| | Respondent | ORDER |

This matter is before the Court upon the Report & Recommendation ("R&R") of Magistrate Judge George J. Limbert (Doc. No. 41), which recommends that the Court (1) dismiss Petitioner Ryan Blumling's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 32); (2) deny Petitioner's Motion for Expedited Proceedings (Doc. No. 31) as moot; (3) deny Respondent's Motion to Dismiss for Failure to Exhaust Administrative Remedies (Doc. No. 37); and (4) deny Petitioner's Motion for a Status Report (Doc. No. 40) as moot.  Petitioner and Respondent each filed partial Objections to the R&R.  (Doc. Nos. 42, 43.)

The Report & Recommendation is ACCEPTED IN PART and REJECTED IN PART, as follows.  The Court adopts the Report & Recommendation insofar as it recommends denying as moot Petitioner's Motions for Expedited Proceedings and for Status Report.  (Doc. Nos.  31, 40.)  However, the Court rejects the Report & Recommendation insofar as it recommends that the Court order the Bureau of Prisons to reconsider Petitioner's request for credit, or alternatively, consider Petitioner as a candidate for home detention, in line with the Attorney General's memorandum concerning COVID-19.  The Court also rejects the Report & Recommendation insofar as it recommends that the Court find that (1) Petitioner exhausted his administrative remedies by pursuing relief directly with

the DSCC instead of pursuing the administrative review process set forth at 28 C.F.R. §§ 542.13-542.15; or (2) the exhaustion requirement should be excused on the basis of futility.

For the following reasons, Respondent's Motion to Dismiss (Doc. No. 37) is GRANTED and the Amended Petition (Doc. No. 32) is DISMISSED WITHOUT PREJUDICE.

## I. Factual Allegations[1]

Between April 22, 2013 and February 22, 2016, Blumling was charged in four separate criminal cases in the Court of Common Pleas of the Commonwealth of Pennsylvania, Allegheny County.  (Doc. No. 32 at ¶ 4; Doc. Nos. 1-1 through 1-4.)  *See Commonwealth of Pennsylvania v. Blumling*, Case Nos. CP-02-CR-003261, CP-02-CR-0004326, CP-02-CR-0012443, CP-02-CR-0003500 (Allegheny Cty Ct. Cmn. Pleas).  Blumling was indicted for various offenses[2] and states that he was granted bond in each of the four state court cases "in a continuous manner from 2013 until February 22, 2016."  (Doc. No. 32 at ¶ 5.)  *See also* Doc. Nos. 1-1 through 1-4.

Meanwhile, on February 10, 2015, Blumling was indicted on two counts of wire fraud and two counts of mail fraud in the Western District of Pennsylvania.  *See United States v. Blumling*, Case No. 2:15-CR-00028 (W.D. Pa.) (docket sheet).  His federal indictment was issued while Blumling was in the Allegheny County Jail awaiting his bond release.  (Doc. No. 32 at ¶ 6.)  On March 25, 2015, Blumling was taken into federal custody and transferred to a federal detention center, the Northeast Ohio Correctional Center - Correctional Corporation of America (NEOCC-CCA), in

---

[1] Respondent did not provide the Court with a transcript containing the filings from Blumling's underlying state or federal court proceedings.  The facts set forth herein are taken from the parties' filings, as well as publicly available docket sheets.

[2] The state court docket sheets attached to Blumling's original Petition (Doc. No. 1) indicate that he was charged with multiple counts of false/fraudulent/incomplete insurance claims, forgery, theft by deception, and controlled substances offenses.  (Doc. Nos. 1-1 through 1-4.)

Youngstown, Ohio.  (*Id*. at ¶ 7.)  *See United States v. Blumling*, Case No. 2:15-CR-00028 (W.D. Pa.) (Doc. No. 44 at p.2.)

On April 24, 2015, Blumling pled guilty to all four counts in his federal indictment.  *See U.S. v. Blumling*, Case No. 2:15CR00028 (W.D. Pa.) (Doc. No. 26.)  Blumling asserts that he remained in custody at NEOCC-CCA until his final sentencing and disposition of his federal matter.  (Doc. No. 32 at ¶ 8.)  On December 3, 2015, Blumling was sentenced in his federal case to a term of 63 months imprisonment and a three-year term of supervised release.  *See U.S. v. Blumling*, Case No. 2:15CR00028 (W.D. Pa.) (Doc. Nos. 41, 42.)  Shortly thereafter, on December 14, 2015, he was transferred back to the Allegheny County Jail.  *See United States v. Blumling*, Case No. 2:15-CR-00028 (W.D. Pa.) (Doc. No. 44 at p. 2.)

On February 22, 2016, Blumling pled guilty in each of his four pending state court matters. (Doc. Nos. 1-1 through 1-4.)  He was subsequently sentenced by the state trial court to a term of incarceration of 3 to 10 years in Case Nos. CP-02-CR-0003261, CP-02-CR-0004326, and CP-02-CR-0012443, and a concurrent period of incarceration of 2 to 4 years in Case No. CP-02-CR-0003500. (*Id*.)  The state court included the following in its sentencing orders:

> Confinement is concurrent to Federal sentence that Defendant is currently serving.
> Defendant may serve this sentence at Federal facility.

(Doc. No. 1-1 at PageID# 5; Doc. No. 1-3 at PageID# 21; Doc. No. 1-4 at PageID# 29.)

However, instead of transferring him to a federal facility, the Allegheny County Jail transferred Blumling to the Pennsylvania Department of Corrections ("PDOC") in March 2016. (Doc. No. 32 at ¶ 11.)  Blumling notified the state trial court of the error.  (*Id*. at ¶ 12.)  On June 9, 2016, the state court issued an order to the PDOC to immediately relinquish jurisdiction with respect to the four state criminal cases and to transfer Blumling to the custody of the Federal Bureau of

3

Prisons ("BOP") to serve his remaining sentence for the four state criminal cases in a federal correctional facility.  (Doc. No. 32-2 at PageID# 130.)  According to Blumling, he served his state sentence and was paroled on May 11, 2017.  (Doc. No. 9 at ¶ 5.)

On September 6, 2017, [3] Blumling states that he was transferred to a federal facility, i.e., FCI-Elkton in Lisbon, Ohio.[4]  (Doc. No. 39 at p. 4.)  He asserts that it was at this time that he first became aware that the BOP was not crediting him for his "state time served."  (*Id.*)  Blumling claims that, after he arrived at FCI Elkton, he immediately began discussions with prison staff about the matter, in particular Officer Shawn Williams, who, at the time, headed the prison's records department.  (*Id.*)  According to Blumling, he was instructed and became aware that he needed to exhaust his administrative remedies by a specific protocol regarding *nunc pro tunc* jail time credit, known as the "Barden Review Process." *Id.  See Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990).

As directed by Officer Williams, Blumling submitted a written request to FCI-Elkton's Records Department on December 1, 2017 to receive credit for time served.  (Doc. No. 39-1.)  The prison's records department apparently forwarded the request to the BOP's Designation and Sentence Computation Center ("DSCC").  (Doc. No. 39-2 at PageID# 179.)  On January 30, 2018, the DSCC responded that it was considering Blumling's request in accordance with *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990), and would make a determination in due course.  (*Id.*)  On June 19, 2018, the

---

[3] The Court notes that, in his original Petition, Blumling states he "has been in a federal institution since 6/25/17."  (Doc. No. 1 at ¶ 5.)

[4] Blumling's projected release date is unclear.  In an attachment to Respondent's Motion to Dismiss, Respondent indicates that his projected release date is January 20, 2022.  (Doc. No. 37-2 at ¶ 2.)  However, an attachment to Respondent's Partial Objection to the R&R states that Blumling is projected for release on March 2, 2022.  (Doc. No. 45-1 at Page ID# 260.)

4

DSCC sent Blumling a letter with an update that it was still in the process of seeking out the position of the federal sentencing court, in accordance with *Barden*.[5]  (Doc. No. 39-2 at PageID# 180.)

Subsequently, on June 25, 2018, Blumling completed a "BP-8 ½" informal resolution form to begin the administrative review process.  (Doc. No. 39-3 at PageID# 182.)  Therein, he stated that "I am owed *nunc pro tunc* jail time credit towards my federal sentence under the *Barden v. Keohane* decision and Prog. Stmt. 5160.05 and DSCC processing time has frustrated my efforts to seek proper application."  (*Id.*)  He asked FCI-Elkton to "apply the *nunc pro tunc* credit to my sentence or compel DSCC/Region to render the proper sentence computation."  (*Id.*)  On that same day, Blumling received a response from FCI Elkton's Case Management Coordinator, Ms. K. Cole.  (*Id.*)  Therein, Ms. Cole stated: "Please refer to your response from DSCC. They are seeking the position of the federal sentencing court." (*Id.*)

Blumling discussed continuing administrative remedies with Officer Williams, which would have been to file a "BP-9" request to the Warden.  (Doc. No. 39 at 6.)  According to Blumling, Officer Williams informed him that the Barden Review Process at DSCC was the ultimate administrative remedy and that the prison and its records department did not have the ability at the institutional level to address nor remedy the issue involving sentence computations or time credits.  (*Id.* at 6-7.)

---

[5] In its June 19, 2018 letter, the DSCC advised Blumling as follows: "[A]s a result of the decision in *Barden v. Keohane*, the Bureau of Prisons (Bureau) considers an inmate's request for prior custody credit for time spent in state custody, as a request for a *nunc pro tunc* designation.  In accordance with Bureau Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence, a designation effecting concurrent service of state and federal sentences is made only when it is consistent with the intent of the federal sentencing Court, or the goals of the criminal justice system. The Designation and Sentence Computation Center (DSCC) is reviewing your request and is in the process of obtaining the necessary documents to conduct the review.  Once the documents are obtained, the DSCC will seek the position of the federal sentencing Court regarding the designation of the non-federal institution for the concurrent service of your federal sentence.  At the completion of the review process, which can sometimes take up to 4 months or longer, the DSCC will make a determination based on the factors under Title 18 U.S.C. § 362l(b), and provide a written notification."  (Doc. No. 39-2 at PageID# 180.)

Blumling asserts that this conclusion was "reinforced" by Ms. Cole's response, which referred to the DSCC.  (*Id*. at p. 7.)

On July 13, 2018, Blumling was served a denial from DSCC for the *nunc pro tunc* designation request.  (Doc. No. 39 at 7.)  Neither Blumling or Respondent have provided the Court with a copy of this denial letter.  However, Blumling did attach to his First Amended Petition a copy of a letter from his federal sentencing judge (District Judge Arthur Schwab) to the BOP dated June 28, 2018. (Doc. No. 9-1.)  Therein, Judge Schwab states as follows:

> This letter responds to your correspondence dated June 22, 2018.  In your June 22, 2018 letter, you notified this Court that Mr. Blumling was requesting that his federal sentence be served concurrently with a Pennsylvania state term of incarceration which Mr. Blumling has already completed.
> .
> Mr. Blumling was sentenced by this Court after pleading guilty to four counts of mail and wire fraud with offense dates of:  6/30/2011, 2/28/2014, 5/5/2014, and 5/31/2014. Conversely, his state court sentence was for crimes relating to controlled substances. Although it appears as though both the state and federal crimes for which he has been sentenced involved elements of fraud, his federal crimes did not involve any sort of scheme with respect to controlled substances.  Rather, his federal crimes and sentence originate from a scheme he developed to convince potential investors to invest in "ongoing coal mining operations," but in reality, Mr. Blumling used the funds the investors provided to pay back previous investors who threatened litigation as opposed to  the acquisition of additional coal mining equipment and/or operational costs as he represented.
>
> Given the disparities between the crimes for which he was convicted and sentenced in state court from those crimes to which he pled guilty and was sentenced in this Court, the state court sentence may not run concurrent with his Federal Court sentence.   He must serve the federal sentence consecutive to the state sentence.

(Doc. No. 9-1.)

According to Blumling, Officer Williams then advised him to seek relief from the courts because the DSCC issued the decision, which is a central office and ultimate time credit decision-

6

making entity of the BOP, and because a court would be the only authority that could intervene, supersede, or render a decision that would override the DSCC's decision.  (Doc. No. 39 at p. 7.)

## II.    Procedural History

On March 1, 2018, Blumling, through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Western District of Pennsylvania.  (Doc. No. 1.)  Blumling thereafter filed an Amended Petition on April 29, 2019.  (Doc. No. 9.)  Therein, he argued that the Bureau of Prisons ("BOP") had failed to provide him with credit against his federal sentence for time previously served for his state convictions.[6] (*Id.*)

On July 2, 2019, Respondent filed a Response in which it argued that that Court lacked jurisdiction over the Petition because Petitioner was not incarcerated in the Western District of Pennsylvania.  (Doc. No. 15.)  Respondent asked the Court to transfer the Petition to the Northern District of Ohio, where Petitioner was incarcerated when he first filed the Petition.  (*Id.*)  Blumling filed a Reply on October 7, 2019.  (Doc. No. 27.)

On November 4, 2019, the District Court for the Western District of Pennsylvania issued an Order transferring the Petition to the Northern District of Ohio.  (Doc. No. 29.)

On January 2, 2020, Blumling, now proceeding *pro se,* filed a second Amended Petition pursuant to § 2241.  (Doc. No. 32.)  Blumling argued that he was "entitled to credit on his federal sentence for the time he spent in [state] custody."  (*Id.* at p. 4.)  He asserted that he had exhausted his administrative remedies in the federal prison system "through the Barden review process," and that any further attempts to pursue such administrative remedies would be futile.  (*Id.* at p. 6.)  Blumling

---

[6] Meanwhile, on January 30, 2017, Blumling filed a petition for post-conviction relief in his state court criminal cases. *See* Doc. No. 1-2 at Page ID# 14. Bluming asserts that this petition was denied by the state court on December 17, 2018. (Doc. No. 9 at ¶ 7.)

requested that the Court determine the date on which his federal sentence began, "in order for the Respondent and Federal Bureau of Prisons to accurately credit the calculation of his date to be released." (*Id.* at p. 7.)  On that same date, Blumling filed a "Motion in request for Expedited Proceedings pursuant to 28 U.S.C. § 1657." (Doc. No. 31.)

On May 13, 2020, Respondent filed a Motion to Dismiss, in which it asserted that the Petition should be dismissed because Blumling had failed to exhaust his administrative remedies. (Doc. No. 37.)  In support thereof, Respondent attached the Declaration of Robin Summers, a paralegal specialist employed by the BOP. (Doc. No. 37-2.)  Therein, Ms. Summers states, in pertinent part, that "[f]ollowing a search of the administrative remedy index, I determined that Petitioner failed to exhaust his available administrative remedies with respect to any issue raised in this petition.  My search of the Bureau of Prison's administrative remedy index for all administrative remedy requests and appeals filed by Petitioner reflects he has not filed and [sic] administrative remedies related to his sentence computation." (*Id.* at ¶ 6.)  Relying solely on its argument that Blumling had failed to exhaust his administrative remedies, Respondent did not address the merits of the Petition.

On April 15, 2020, Blumling filed his Traverse in which he again argued that he properly exhausted his administrative remedies with respect to his request for custody credits. (Doc. No. 39.)  Blumling asserted that he believed that "the Barden review being performed was [the] administrative remedy applicable to this type of matter." (*Id.* at p. 7.)  He further argued that "this denial decision and process took over seven (7) months from the Dec 1st commencement to the July 13th 2018 denial; to begin another administrative process to produce the identical results, especially when these processes could take more than six (6) months would be the definition of both futile and insanity." (*Id.* at pp. 7-8.)  In addition, for the first time, Blumling requested that he be released or, in the

alternative, released to home confinement due to the dangerous conditions at FCI-Elkton as a result

of COVID-19.  (*Id.* at pp. 10-13.)  In this regard, Blumling asserted that he is at increased risk of

serious illness due to his "well-documented health conditions, including an auto-immune disease."[7]

(*Id*. at p. 13.)

Thereafter, on June 4, 2020, Blumling filed a "Motion in Request of Status Report of pending

2241 Petition."  (Doc. No. 40.)

On June 18, 2020, Magistrate Judge Limbert issued his Report & Recommendation.  (Doc.

No. 41.)  Judge Limbert first recommended that the Court find that Blumling had fully exhausted his

administrative remedies, explaining as follows:

> [Blumling] first attempted to informally resolve the dispute with institution staff.
> While Petitioner did not proceed through the intermediate steps, he complied with
> what the prison staff recommended in order to exhaust his administrative remedies.
> Petitioner essentially skipped the intermediate steps and requested relief directly from
> the ultimate authority on the matter, the DSCC, which carries out sentence
> computation functions for the BOP. See FEDERAL BUREAU OF PRISONS,
> Custody & Care: Sentence Computations, available at https://www.bop.gov/inmates/
> custody_and_care/sentence_computations.jsp; *Barden v. Keohane*, 921 F.2d 476, 482
> (3d Cir. 1990) (discussing legislative history); see also ECF Dkt. #39-2. The DSCC
> fully considered Petitioner's claim and made its own determination, thus making any
> subsequent action at a lower level unnecessary and futile.

(*Id.* at p. 7-8.)  Judge Limbert then recommended that the Court deny the Petition on the merits,

finding that, under *Barden v. Keohane*, 921 F.2d 476 (3rd Cir. 1990) and other case law, "the BOP,

not the federal court, has the exclusive power to order sentence concurrency under these particular

facts."  (*Id*. at pp. 8-9.)

---

[7] According to the docket in his federal criminal case, Blumling, through counsel, filed a Motion for Release/Reduced
Sentence pursuant to CARES or the First Step Act in the U.S. District Court for the Western District of Pennsylvania on
May 7, 2020.  *See U.S. v. Blumling*, Case No. 2:15cr28 (W.D. Pa.) (Doc. No. 47.)  On June 18, 2020, Judge Schwab
denied Blumling's Motion.  *Id*. at Doc. No. 55.

Lastly, Judge Limbert found that "[g]iven that Petitioner's federal convictions are for non-violent offenses . . . and [considering] his underlying medical condition, the undersigned agrees that Petitioner may be a good candidate for home confinement." (*Id*. at p. 10.)  Judge Limbert therefore recommended that the Court "order the DSCC of the BOP to reconsider Petitioner's request for credit, or alternatively, consider Petitioner as a candidate for home detention, in line with the Attorney General's memorandum concerning COVID-19." (*Id*.)

On July 1, 2020, Blumling filed an Objection to Magistrate Judge Limbert's R&R. (Doc. No. 42.)  Respondent filed a Partial Objection on that same date, which was supported by the Declarations of Alisha Gallagher and Kristy Cole. (Doc. No. 43.)  Several days later, with leave of Court, Respondent filed an Amended Declaration of Kristy Cole in support of its Partial Objection. (Doc. No. 45.)

## III.  Standard of Review

Parties must file any objections to a Report & Recommendation within fourteen days of service.  Fed. R. Civ. P. 72(b)(2).  Failure to object within this time waives a party's right to appeal the district court's judgment.  *See Thomas v. Arn*, 474 U.S. 140, 145 (1985); *United States v. Walters*, 638 F.2d 947, 949-950 (6th Cir. 1981).

When a petitioner objects to the magistrate judge's Report and Recommendation, the district court reviews those objections *de novo*.  Fed. R. Civ. P. 72(b)(3).  A district judge:

> must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id*.  "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the

opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, 2006 WL 903199 at * 7 (N.D. Ohio April 7, 2006) (citing *Walters*, 638 F.2d at 949–50).

The Court conducts a *de novo* review of the portions of the Magistrate Judge's Report to which Blumling and Respondent have properly objected.

## IV.    Analysis

In its Partial Objection, Respondent objects to Magistrate Judge Limbert's recommendation that this Court order the BOP to reconsider Blumling's request for home confinement under the Attorney General's COVID-19 guidelines.  (Doc. No. 43.)  In addition, Respondent urges the Court to reject the Magistrate Judge's finding that Blumling exhausted his administrative remedies with respect to his sentence computation claim.  (*Id*.)

Blumling's Objections are limited to the R&R's recommendations regarding his sentence computation.  (Doc. No. 42.)  Specifically, Blumling requests that the Court "modify the R&R to include or stipulate a specific date on which [his] federal sentence commences," in order to "remove any disputes" regarding "primary jurisdiction or sovereignty issues by the BOP."  (*Id*. at pp. 2-3.)  He further argues that his case is factually distinguishable from *Barden, supra*, and requests that the Court order the BOP to recalculate his sentence "based on jurisdictional issues that exist and not simply just concurrence matters that are associated with the BOP's discretion."  (*Id*. at p. 4.)  Lastly, Blumling argues that "the Court absolutely has the power to order the BOP to order credit to [his] sentence and should reconsider the recommendation to dismiss the writ of habeas corpus."  (*Id*. at p. 6.)

The Court will first address Respondent's Objection relating to Magistrate Judge Limbert's recommendation that the Court direct the BOP to consider Blumling's request for home confinement due to the dangers posed by COVID-19. The Court will thereafter consider the parties' respective Objections to Magistrate Judge Limbert's recommendations relating to Blumling's sentence computation claim.

### 1. Request for Home Confinement Due to COVID-19

As noted above, in the R&R, Magistrate Judge Limbert recommends that this Court should "order the DSCC of the BOP to reconsider Petitioner's request for credit, or alternatively, consider Petitioner as a candidate for home detention, in line with the Attorney General's memorandum concerning COVID-19."[8] (Doc. No. 41 at p. 10.)

Respondent first objects on the ground that Blumling has failed to exhaust his administrative remedies with respect to this claim. (Doc. No. 43 at p. 3.) Respondent argues that "it is undisputed that Blumling failed to file any administrative claim regarding his request for home confinement because his pre-existing medical conditions allegedly make him a higher risk of contracting COVID-19." (*Id.*) Respondent asserts that, for this reason alone, this Court should reject the R&R's recommendation that the BOP be ordered to address Blumling's claim. (*Id.*)

Respondent further argues that the BOP should not be ordered to consider Blumling as a candidate for home confinement under the Attorney General's COVID-19 guidelines because, "like many other inmates at [FCI-Elkton]," Blumling has already been assessed for eligibility for home

---

[8] As a preliminary matter, the Court notes that Blumling first raised his request for home confinement in his Traverse, rather than in his Amended Petition. The Magistrate Judge recognized that courts "generally need not address new issues raised in a traverse," but nonetheless decided to consider the issue "due to the rapid change in circumstances during the course of this matter." (Doc. No. 41 at p. 10.) Respondent does not object to the Magistrate Judge's decision to consider this issue despite the fact that it was first raised in the Traverse.

12

confinement.  (*Id.* at p. 4.)  Citing the Declaration of Kristy Cole, Respondent notes that, on April 23, 2020, Blumling was determined to be ineligible for home confinement "because of his high risk of recidivism and his disciplinary history, which includes possession of an illegal substance and multiple violations of prison rules within the last year."  (*Id.*)  *See also* Amended Decl. of Kristy Cole (Doc. No. 45) at ¶¶ 21-22.

Blumling did not file a response to Respondent's Partial Objection.

It is well-settled in the Sixth Circuit that federal prisoners must exhaust their administrative remedies before filing a § 2241 habeas petition.  *See, e.g., Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013) (citing *Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006)).  *See also Little v. Hopkins*, 638 F.2d 953, 954 (6th Cir. 1981).  As the Supreme Court has explained, exhaustion serves several important functions:

> First, exhaustion protects administrative agency authority. Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures.
>
> Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration.

*Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (internal citations and quotation marks omitted).  *See also Fazzini*, 473 F.3d at 232; *Bronson v. Carvaljal*, 2020 WL 2104542 at * 2 (N.D. Ohio May 1, 2020).

District courts within this Circuit have found that the "requirement of exhaustion applies equally to § 2241 petitions in which COVID-19 is the backdrop for the relief sought."  *Cottom v.*

*Williams*, 2020 WL 2933574 at * 1 (N.D. Ohio June 3, 2020).  *See also Bronson*, 2020 WL 2104542 at * 2 ("The Court finds that the prudential concerns surrounding the enforcement of the exhaustion requirement for motions brought pursuant to 28 U.S.C. § 3582 apply equally to habeas petitions seeking similar relief under 28 U.S.C. § 2241."); *Singleton v. Williams*, 2020 WL 2526990 at * 1 (N.D. Ohio May 18, 2020) ("This court agrees with other district courts that have held it is necessary for federal prisoners to demonstrate they have exhausted their administrative remedies with the BOP before seeking relief due to COVID-19 circumstances whatever the statutory basis for their claim (i.e., whether they seek relief under § 2241 or 18 U.S.C. § 3582.)"); *Simmons v. Warden, FCI-Ashland*, 2020 WL 1905289 at *3 (E.D. Ky. Apr. 17, 2020) (denying without prejudice defendant's habeas petition, pursuant to 28 U.S.C. § 2241, for immediate release due to COVID-19 for failure to exhaust administrative remedies); *Burke v. Hall,* 2020 WL 553727 at *1 (M.D. Tenn. Feb. 4. 2020) (denying without prejudice § 2241 habeas petition seeking immediate release because it was "apparent on the face of Burke's...petition that he did not exhaust his administrative remedies").

Respondent argues (and Blumling does not contest) that, in order to exhaust all processes under the Administrative Remedy Procedure for Inmates, an inmate must first attempt to informally resolve the dispute with institution staff.  28 C.F.R. § 542.13. *See also* Doc. No. 43-1 at ¶ 2.  If informal resolution efforts fail, the inmate may raise his complaint to the Warden of the institution in which he is confined, within 20 calendar days of the date that the basis of the complaint occurred.  28 C.F.R. §§ 542.13, 542.14.  If the Warden denies the administrative remedy request, the inmate may file an appeal with the Regional Director within 20 calendar days of the date of the Warden's response.  28 C.F.R. §§ 542.14, 542.15.  If the Regional Director denies the appeal, the inmate may appeal that decision to the General Counsel of the Federal Bureau of Prisons within 30 calendar days

14

from the date of the Regional Director's response. 28 C.F.R. §§ 542.14 and 542.15. The administrative remedy process is not considered to be "exhausted" until an inmate's final appeal is denied by the Bureau of Prisons General Counsel.

Here, Blumling does not argue that he has exhausted his administrative remedies with respect to his claim for home confinement.[9] Indeed, Blumling does not assert that he has even attempted the first step of the administrative review process (i.e., informal resolution) much less completed all four of the steps set forth above. Nor does Blumling argue that this Court should excuse the exhaustion requirement with respect to his home confinement claim, on the grounds that it would have been futile for him to pursue his administrative remedies or that those remedies would have been unable to afford him the relief he requests. *See McKart v. United States*, 395 U.S. 185, 200 (1969) (petitioner must show that the administrative remedy is inadequate or cannot provide the relief requested for exception to the exhaustion requirement to apply); *Goar v. Civiletti*, 688 F.2d 27, 28–29 (6th Cir.1982). *See also Aron v. La Manna*, 2001 WL 128349 at * 1 (6th Cir. Feb. 6, 2001).

Because Blumling has failed to exhaust his administrative remedies with respect to this claim, the Court respectfully declines to accept the Magistrate Judge's recommendation that the BOP should be ordered to consider Blumling's request for home confinement.

The Court also declines to order the BOP to consider Blumling as a candidate for home confinement pursuant to the Attorney General's recent Memoranda regarding BOP review of inmates who have COVID-19 risk factors. As noted above, on July 7, 2020 (after the Magistrate Judge issued

---

[9] Respondent, on the other hand, submitted the Declaration of BOP Senior Attorney Alisha Gallaher, in which she avers that her "search of the Bureau of Prisons administrative remedy index for all administrative remedy requests and appeals filed by Petitioner reflects he has not filed any administrative remedies related to release on home confinement." (Doc. No. 43-1 at ¶ 7.)

his R&R), Respondent submitted the Amended Declaration of Kristy Cole, in which she discusses

Memoranda issued by Attorney General on March 26, 2020 and April 3, 2020.  (Doc. No. 45-1 at ¶¶

4-13.)  Specifically, she explains (in pertinent part) as follows:

> 4.   On March 26, 2020, the Attorney General issued a Memorandum for the Director
> of the Bureau of Prisons (the "March 26, 2020 Memorandum") to ensure that, in light
> of the COVID-19 pandemic, BOP utilizes home confinement, where appropriate, to
> protect the health and safety of BOP personnel and people in BOP's custody.  Pursuant
> to the March 26, 2020 Memorandum, BOP is prioritizing the use of its statutory
> authorities to grant home confinement for inmates seeking transfer in connection with
> the ongoing COVID-19 pandemic.  It was noted in the March 26, 2020 Memorandum
> that many inmates will be safer in BOP facilities where the population is controlled
> and there is ready access to doctors and medical care.  But for some eligible inmates,
> home confinement might be more effective in protecting their health.

> 5.   In assessing whether home confinement should be granted pursuant to the March
> 26, 2020 Memorandum, BOP considers the totality of circumstances for each
> individual inmate, the statutory requirements for home confinement, and the following
> non-exhaustive list of discretionary factors:

> a.   The age and vulnerability of the inmate to COVID-19, in accordance with
> the CDC guidelines;

> b.   The security level of the facility currently holding the inmate, with priority
> given to inmates residing in low and minimum security facilities;

> c.   The inmate's conduct in prison, with inmates who have engaged in violent
> or gang-related activity in prison or who have incurred a BOP violation within
> the last year not receiving priority treatment;

> d.   The inmate's score under PATTERN (the Prisoner Assessment Tool
> Targeting Estimated Risk and Need), with inmates who have anything above a
> minimum score not receiving priority treatment;

> e.   Whether the inmate has a demonstrated a verifiable re-entry plan that will
> prevent recidivism and maximize public safety, including verification that the
> conditions under which the inmate would be confined upon release would
> present a lower risk of contracting COVID-19 than the inmate would face in his
> or her BOP facility; and

> f. The inmate's crime of conviction, and assessment of the danger posed by the
> inmate to the community. ***

16

6. In addition to setting forth these factors, the March 26, 2020 Memorandum stated that before granting any inmate discretionary release, the BOP Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risk of COVID-19 at the location in which the inmate seeks home confinement. ***

***

8. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Public Law No. 116-236 (enacted March 27, 2020), authorizes the Attorney General to expand the cohort of inmates who can be considered for home confinement upon his finding of emergency conditions which are materially affecting the function of the BOP. On April 3, 2020, the Attorney General made that finding, and in a Memorandum for the Director of the Bureau of Prisons ("April 3, 2020 Memorandum"), authorized the Director to immediately maximize appropriate transfers to home confinement of all appropriate inmates held at BOP facilities where the Director determines that COVID-19 is materially affecting operations.

9. The April 3, 2020 Memorandum specifically stated that the BOP must move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of FCI Oakdale, FCI Danbury, and FCI Elkton, and to give priority to those institutions, and others similarly affected, as the BOP continues to process the remaining inmates who are eligible for home confinement under pre-CARES Act standards.

10. The April 3, 2020 Memorandum directed that the BOP give priority in implementing the new standards to the most vulnerable inmates at the most affected facilities and was explicit that the BOP should begin implementing this directive immediately at the identified facilities and any other facilities at risk of similar problems. The April 3, 2020 Memorandum stated that the review should include a much broader pool of at-risk inmates -- not only those who were eligible for transfer prior to the Attorney General exercising his authority under the CARES Act.

11. *** The assessment of all inmates remains guided by the factors in the March 26, 2020 Memorandum.

(*Id*. at ¶¶ 4-11.)  Ms. Cole avers that, pursuant to the Attorney General's March and April 2020 Memoranda, Blumling was reviewed for home confinement due to COVID-19 on April 23, 2020, and determined not to be eligible "due to his HIGH risk of recidivism and Incident Report History

which include multiple 100 series Incident Reports in the past year." (*Id*. at ¶ 22.)  In support of this assertion, Ms. Cole attaches Blumling's PATTERN Risk Score and his Discipline History as exhibits to her Amended Declaration. (Doc. No. 45-1 at PageID#s 260-265.)

Blumling does not allege that he has exhausted his administrative remedies with respect to the BOP's determination that he is ineligible for home confinement pursuant to its review under the Attorney General's March and April 2020 Memoranda.  Moreover, he failed to file a response to Respondent's Partial Objection, and thus has not raised any challenges to the assertions contained in Ms. Cole's Amended Declaration.  Accordingly, Respondent's Objection with respect to this issue is well-taken.

Accordingly, and for all the reasons set forth above, the Court respectfully declines to accept the Magistrate Judge's recommendation that the Court order the DSCC of the BOP to reconsider Petitioner's request for credit, or alternatively, consider Petitioner as a candidate for home detention, in line with the Attorney General's memorandum concerning COVID-19.[10]

## B.      Sentence Computation

As discussed *supra,* the Magistrate Judge recommends that the Court find that Blumling "fully exhausted his administrative remedies" when he requested relief directly from the DSCC, rather than first pursuing relief from the Warden, the Regional Director, and the BOP General Counsel pursuant to the procedure set forth in 28 U.S.C. §§ 542.13 through 542.15.  (Doc. No. 41 at pp. 7-8.)  The Magistrate Judge found that "the DSCC fully considered Petitioner's claim and made its own

---

[10] The Court notes that, although Blumling first raised the issue of home confinement due to COVID-19 in his Traverse, Respondent failed to file a response addressing this issue while this matter was pending before the Magistrate Judge. Thus, when he issued his R&R, Magistrate Judge Limbert did not have the benefit of Ms. Cole's Amended Declaration. Nor did the Magistrate Judge have any argument from Respondent regarding Blumling's failure to exhaust his administrative remedies.

18

determination, thus making any subsequent action at a lower level unnecessary and futile." (*Id*. at p. 8.)

Respondent objects, arguing that Blumling's sentence computation claim should be dismissed due to his failure to exhaust administrative remedies. (Doc. No. 43 at pp. 4-6.) Specifically, Respondent asserts that exhaustion should not be excused under the doctrine of futility because "there is no evidence the decision regarding Blumling's request for relief was biased or predetermined." (*Id*. at p. 5.) In this regard, Respondent argues that the DSCC's ruling could not be considered a final determination under the futility doctrine without the input of the Warden and Regional Director, which did not occur in this case due to Blumling's failure to follow the required administrative review process. (*Id.* at p. 5- 6.) Respondent further asserts that "there is no case law supporting the notion that an adverse decision from the DSCC allows an inmate to bypass the entire BOP administrative process." (*Id*. at p. 6.) Blumling did not file a response to Respondent's Objection.

As set forth *supra*, federal prisoners must exhaust their administrative remedies before filing a 2241 habeas petition. *See, e.g., Luedtke*, 704 F.3d at 466; *Fazzini*, 473 F.3d at 231; *Little*, 638 F.2d at 954. Indeed, "where a petitioner challenges the computation of credit for time-served, a reviewing court cannot entertain such an action unless the petitioner has exhausted his administrative remedies within the Bureau of Prisons." *Irvin v. Federal Bureau of Prisons*, 2009 WL 1616676 at * 2 (W.D. Ky. June 9, 2009). *See also United States v. Oglesby*, 52 Fed. Appx 712, 714 (6th Cir. 2002) ("Only after a prisoner seeks administrative review of the computation of this credit, see 28 C.F.R. §§ 542.10-.16 (1997), and has exhausted administrative remedies, may the prisoner then seek judicial review pursuant to 28 U.S.C. § 2241."); *Miller v. Federal Bureau of Prisons*, 2014 WL 2722343 at * 3 (N.D. Ohio June 15, 2014) (finding that "after Miller has sought and exhausted administrative remedies

19

pursuant to 28 C.F.R. §§ 542.10-16 regarding prior custody credit, he may seek § 2241 judicial review.")

"Nevertheless, '§ 2241's exhaustion requirement is not statutorily required,' and 'a prisoner's failure to exhaust available state or administrative remedies may be excused where pursuing such remedies would be futile' or ineffective." *Cucu v. Terris*, 2018 WL 1203495 at * 2 (E.D. Mich. March 8, 2018) (quoting *Fazzini,* 473 F.3d at 235-36.)  For example, "[e]xceptions to the exhaustion requirement exist if pursuing such remedies would be futile, such as when the administrative body lacks competence to resolve an issue, is biased, or has predetermined the issue, or when resort to the administrative remedy may cause undue prejudice to assertion of the claim in a subsequent court action." *Holmes v. Eichenlaub*, 2007 WL 3408532 at * 1 (E.D. Mich. Nov. 13, 2007).  *See also McKart*, 395 U.S. at 200 (petitioner must show that the administrative remedy is inadequate or cannot provide the relief requested for exception to the exhaustion requirement to apply); *Aron*, 2001 WL 128349 at * 1.  A habeas petitioner's failure to complete the administrative remedy process also may be excused where his failure is due to the administrator, rather than the petitioner.  *See Fazzini*, 473 F.3d at 236; *Irvin*, 2009 WL 1616676 at * 3.

Here, the Court finds that Blumling has not demonstrated that he exhausted his administrative remedies pursuant to the procedure set forth in 28 C.F.R. §§ 542.13-15.  While Blumling did submit a form requesting informal review of his custody credit claim to FCI-Elkton on June 25, 2018, he does not allege (and has submitted no evidence showing) that he thereafter raised his complaint with either the Warden, the Regional Director, or the BOP General Counsel.  *See* 28 C.F.R. §§ 542.13-542.15.  Accordingly, the Court finds that Blumling has failed to fully exhaust his administrative remedies as required by federal regulations.

Magistrate Judge Limbert recommends the Court find that, under the circumstances presented, exhaustion would be futile because "the DSCC fully considered Petitioner's claim and made its own determination, thus making any subsequent action at a lower level unnecessary." (Doc. No. 41 at p. 8.) The R&R does not cite any authority in support of this conclusion.

The Court declines to find that it would have been futile for Blumling to exhaust his administrative remedies through the formal process set forth in 28 C.F.R. §§ 542.13-542.15. Blumling has provided no evidence that either the Warden, the Regional Director, or the BOP General Counsel were biased or had predetermined the issue. Moreover, aside from alleged remarks made by Officer Williams, there is nothing in the record to support the conclusion that input from the Warden, Regional Director, and/or the BOP General Counsel could not have led to a different result. *See Williams v. Willis*, 2018 WL 852381 at * 7 (W.D. Tex. Feb. 13, 2018) ("There is no reason to believe with certainty that officials at the regional office and office of general counsel would have made the same determination [as the DSCC regarding the issue of petitioner's custody credits]."), *aff'd* 765 Fed. Appx. 83 (5th Cir. 2019). Indeed, "the use of the established administrative process for petitioner's [custody credit] claims would have provided the BOP with an opportunity to correct the alleged errors and would promote judicial efficiency by developing a factual record at the administrative level." *Jones v. Sanders*, 2012 WL 2320889 at * 4 (C.D. Cal. March 22, 2012). *See also Williams*, 2018 WL 852381 at * 8 ("Williams' disagreement with the BOP's calculation of time credits is exactly the type of dispute that the administrative review process may best resolve.").

For this reason, several courts have found, under similar circumstances, that obtaining an adverse decision from the DSCC directly (instead of following the required administrative review process) does not excuse exhaustion. As one district court explained:

21

> Petitioner's contention that he sought relief from the DSCC, but was denied, does not convince the Court that exhaustion would be futile. Despite the denial by the DSCC of petitioner's request for custody credits, petitioner was still required to seek administrative relief through the applicable levels, i.e., petitioner was required to submit his request for relief to the Warden, Regional Director, and Office of the General Counsel. The fact that petitioner submitted a request to the DSCC, and the fact that the DSCC provided a corresponding response, does not relieve petitioner of his obligation to exhaust his administrative remedies or demonstrate that exhaustion of administrative remedies would be futile.  Under these circumstances, the Court concludes that excusing petitioner from seeking administrative review would improperly encourage the deliberate bypass of the BOP's administrative review process. *See Laing*, 370 F.3d at 1000.

*Jones v. Sanders*, 2012 WL 2320889 at * 4 (C.D. Cal. March 22, 2012), *report and recommendation adopted by* 2012 WL 2322446 (C.D. Cal. June 17, 2012).  *See also Darby v. Banks*, 2012 WL 3930340 at * 4 (C.D. Cal. July 26, 2012), *report and recommendation adopted by* 2012 WL 3930338 (C.D. Cal. Sept. 6, 2012) ("[P]etitioner's claim that the DSCC response renders further steps futile is unavailing.  The DSCC denial does not relieve petitioner of his duty to exhaust his administrative remedies.")

Although not raised by either party in their Objections or addressed in the Report & Recommendation, the Court notes that the Sixth Circuit has held that a petitioner's failure to complete the administrative remedy process may also be excused where his failure is due to the administrator, rather than the petitioner.  *See Fazzini*, 473 F.3d at 236.  Here, Blumling suggests in his Traverse that his failure to complete the administrative review process was due to statements made by Officer Williams that Blumling should contact the DSCC directly regarding this issue instead of raising his claim to the Warden, Regional Director, and BOP General Counsel.  (Doc. No. 39 at p. 6.)  Blumling further states that, when the DSCC denied his claim, it was Officer Williams that told him that "the best course of action was to seek relief from the courts, because the Barden decision and the issue of

22

time credit was rendered by the DSCC, which is a central office and ultimate time credit decision making entry of the DSCC."  (*Id*. at p. 7.)

The Court rejects this argument.  As an initial matter, Blumling does not argue (and there is nothing in the record to suggest) that he was prevented by anyone at FCI Elkton from pursuing the administrative review process set forth at 28 C.F.R. §§ 542.13-542.15.  Nor is there any evidence to suggest that he was unaware of this process.  Indeed, as noted above, on June 25, 2018, Blumling submitted the appropriate form for requesting the first step of the administrative review process; i.e., informal review of his custody credit claim.  (Doc. No. 39-3 at PageID# 182.) The bottom of that form expressly advises inmates to proceed with the Administrative Review Process, stating "[i]f [the] complaint is not informally resolved, forward original resolution form attached to administrative remedy, to the Administrative Remedy Clerk."  (*Id*.)  Moreover, the BOP webpage regarding Sentence Computations advises inmates to follow the Administrative Review Process, as follows:

> Sentence computation functions for the Bureau of Prisons (BOP) are carried out at the Designation and Sentence Computation Center (DSCC), located at the Grand Prairie Office Complex in Grand Prairie, TX.
>
> ***
>
> When an inmate is housed at a Bureau institution, questions about a sentence computation should be brought to the attention of Correctional Systems staff at the facility. **If the inmate is not satisfied with the response received, he/she may file an appeal through the Administrative Remedy process**. ***

*See* Federal Bureau of Prisons, Custody & Care: Sentence Computations, available at

https://www.bop.gov/inmates/custody_and_care/sentence_computations.jsp (emphasis added).

Thus, while it is unfortunate that a corrections officer may have given Blumling incorrect information, the fact remains that Bluming was aware of the administrative review process and was not prevented from using that process by any institutional staff member.  Under these circumstances,

23

the Court cannot find that his failure to exhaust his administrative remedies should be excused on the basis of futility.

Accordingly, the Court finds Respondent's Objection well-taken and rejects the Magistrate Judge's conclusion that Blumling exhausted his administrative remedies by pursuing relief directly with the DSCC instead of pursuing the administrative review process set forth at 28 C.F.R. §§ 542.13-542.15.  The Court also rejects the Magistrate Judge's conclusion that the exhaustion requirement should be excused on the basis of futility.  Respondent's Motion to Dismiss (Doc. No. 37) is, therefore, GRANTED.

Because the Court finds that Blumling failed to exhaust his administrative remedies, the Court will not reach the Magistrate Judge's conclusion that the Amended Petition should be denied on the merits because "the BOP, not the federal court, has the exclusive power to order sentence concurrency under these particular facts."  (Doc. No. 41 at p. 8.)  As Blumling's Objection relates entirely to this issue, Blumling's objections are overruled without prejudice.

Finally, neither party raises any Objection to the Magistrate Judge's recommendation that the Court deny Blumling's Motions for Expedited Proceedings (Doc. No. 31) and for Status Report (Doc. No. 40) as moot.  Accordingly, finding no clear error, the Court adopts the Magistrate Judge's recommendations that both Motions be denied as moot.

**V.      Conclusion**

For all the reasons set forth above, the Magistrate Judge's Report & Recommendation (Doc. No. 41) is ADOPTED IN PART and REJECTED IN PART as follows.  The Court adopts the Report & Recommendation insofar as it recommends denying as moot Petitioner's Motions for Expedited Proceedings and for Status Report.  (Doc. Nos.  31, 40.)  However, the Court rejects the Report &

24

Recommendation insofar as it recommends that the Court order the Bureau of Prisons to reconsider Petitioner's request for credit, or alternatively, consider Petitioner as a candidate for home detention, in line with the Attorney General's memorandum concerning COVID-19.   The Court also rejects the Report & Recommendation insofar as it recommends that the Court find that (1) Petitioner exhausted his administrative remedies by pursuing relief directly with the DSCC instead of pursuing the administrative review process set forth at 28 C.F.R. §§ 542.13-542.15; or (2) the exhaustion requirement should be excused on the basis of futility.

Respondent's Motion to Dismiss (Doc. No. 37) is GRANTED and the Amended Petition (Doc. No. 32) is DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

 *s/Pamela A. Barker*

PAMELA A. BARKER

Date:  July 28, 2020                              U. S. DISTRICT JUDGE

25